MINNIE L. COOK, ET AL., PLAINTIFFS IN ERROR, v. WALLEY & ROLLINS, ET AL., DEFENDANTS IN ERROR.

POST MORTEM EXAMINATION OF BODY OF DECEASED.—Where the ordinances of a city require a physician's certificate of the cause of death before burial of the body of a deceased person, and the circumstances of death in a certain case are such as to render a *post mortem* examination of the body necessary to enable the attending physician to certify the true cause of death, an action for damages will not lie in favor of the heirs of the deceased either against a physician who has made the examination in a proper manner, or against the undertakers having charge of the body for permitting the examination to be made.

*Error to District Court of Arapahoe County.*

Mr. F. W. ROBERTSON and Mr. A. S. FISHER, for plaintiffs in error.

Mr. E. W. WAYBRIGHT and Messrs. KEELER & SAYLES, for defentants in error.

RICHMOND, P. J.  The complaint in this case alleges that the defendants Walley & Rollins were doing business as undertakers in the city of Denver, and that the defendant Dr. A. M. Bucknum is a practicing physician in the same place. That on the 10th of January, 1890, Tamar V. Thorpe, a resident of the city of Denver, died, and that her body was taken to the establishment of Walley & Rollins to await prepara-

tion for its burial, and that it was placed by plaintiffs under the care, custody and protection of said Walley & Rollins as undertakers, until they could prepare or get ready for the funeral and burial of the remains. That said Walley & Rollins undertook for a valuable consideration to furnish the coffin and hearse, and perform all services incident to and that was usual and customary in their said business as undertakers. That on or about the 11th day of January, 1890, and in the night-time and whilst the said body was still under the custody and safe-keeping of said Walley & Rollins for the said purpose of funeral and burial, the said defendant, Dr. A. M. Bucknum, with the knowledge and consent of said Walley & Rollins and with their aid and assistance, they, the said Walley & Rollins being unmindful of their obligations to the plaintiffs and that of their said business as undertakers, imposed upon them by virtue of their said business as undertakers as aforesaid, dissected, cut open, mutilated and otherwise abused and maltreated the body of said Tamar V. Thorpe, and indecently and outrageously exposed to the public view the nude body of said deceased. That the said acts were done without the knowledge or consent of plaintiffs, without any right or lawful authority whatever, and against the wishes and desires of plaintiffs and contrary to the law. That the plaintiff Minnie L. Cook is the daughter, and plaintiff William L. Thorpe is the son of said Tamar V. Thorpe, and the sole heirs. That by reason of said acts the confidence of the plaintiffs has been betrayed, their rights disregarded and plaintiffs' feelings cruelly lacerated, and the love, veneration and respect that the plaintiffs entertained for their mother have been shocked and wounded, and the plaintiffs have suffered therefrom both in mind and in body, to their damage in the sum of $25,000. Prayer for judgment.

Defendants, Walley & Rollins, by a separate answer deny the allegations in the complaint, and for a second defense state that the body was given into their care and custody by one J. S. Casserleigh, and from him they received authority to have said remains subjected to a *post mortem* examination

as well as also from Minnie L. Cook, the plaintiff, and that a *post mortem* examination was necessary in order to obtain a certificate of burial.

For a third defense they allege that the *post mortem* examination was fully authorized by the deceased in her lifetime, and that it was conducted in accordance with her request given to Dr. A. M. Bucknum while living.

Dr. Bucknum, for a separate answer, denies the allegations in the complaint, and for a second defense alleges the consent of deceased while living to a *post mortem* examination after her death, and for a third defense he alleges that he was her regular attending physician, and after her death was applied to as such physician to issue a certificate of death; that in compliance with the ordinances of the city of Denver and in pursuance of the statute in such cases made and provided, he made the necessary and proper examination to ascertain the cause of death of the deceased, and thereupon certified and recorded the same as required by the law and the ordinances, and the rules and regulations of the board of health of the city of Denver.

Plaintiffs reply by way of a general denial to the second and third defenses of each of the defendants.

The case was tried to a jury but after hearing the testimony the court directed the jury to return a verdict for defendants. To reverse this judgment this writ of error is prosecuted. Plaintiffs in error contend that the complaint contains a good cause of action, and that the court erred in thus instructing the jury.

There are fifteen errors assigned, directed mostly to error of the court in refusing testimony offered by plaintiffs and to the instructions of the court, to the refusing of instructions asked by the plaintiffs as well as to admission of testimony offered by defendants over the objections of plaintiffs.

A thorough examination of the abstract in this case discloses the facts to be that Tamar V. Thorpe had, at the time of her decease, surviving her a husband as well as these two children, and that the plaintiffs in this suit never made any

contract directly or indirectly with the firm of Walley & Rollins, and that the death of Tamar V. Thorpe was sudden and occurred in a hack while in company with J. S. Casserleigh; that she was living separate and apart from her children and her husband; that the *post mortem* examination was conducted in a decent and scientific manner, without any undue exposure of the body, and under circumstances which would seem to warrant a physician ascertaining the cause of death before issuing a certificate.

By the pleadings in this case as appears from the record, we are warranted in saying that plaintiffs did not, in their replication, deny the existence of an ordinance requiring a physician's certificate before burial.

In this case plaintiffs thought proper to aver an existing contract between the parties themselves and the defendants, Walley & Rollins, for they say that the body was placed in the care of these defendants by the plaintiffs, and that the defendants undertook for a valuable consideration to furnish the coffin and hearse, and perform all the services incident to and that were usual and customary in their business as undertakers, and that they were unmindful of their obligations to the plaintiffs and wholly disregarded their obligations and violated the obligations imposed upon them in permitting a *post mortem* examination. It seems to be a well recognized rule that whenever a wrong is founded upon a contract no one not privy to the contract can sue in respect of such wrong. Moak's Underhill on Torts, rule 8, page 24.

The above principle being true the action of the court directing the verdict for defendants was warranted, but, as appears from the summing up by the judge, other reasons operated to confirm his conclusions that the plaintiffs ought not to recover, one of which was that the proof showed that the plaintiffs were not the sole heirs of the deceased; that she left a husband surviving her whose duty it was, in my judgment, to attend to the burial of his wife. It can be said that there is some doubt about this question, still the authorities indicate that at common law it was the duty of

the husband to bury the wife.   Schouler on Husband and Wife, § 347.

*Wyncoop v. Wyncoop*, 42 Pa. St. 293, a case cited by plaintiffs in error, declares that it is the widow's duty to bury the body of the deceased husband, and this seems to be reiterated in the case of *Snyder v. Snyder*, 60 How. Prac. Rep. 368; *vide Secor case*, 10 Albany Law Journal 70.

Accepting this doctrine as correct it would seem as though the husband was the proper party to make the contract with the undertakers.   But leaving the proposition as an unsettled one, still the evidence shows that the individual who was with the deceased at the time of her death caused the body to be conveyed to the undertakers, entered into a contract then and there to pay for the services to be rendered by them, and subsequently did pay.   But if all that has been said before is erroneous or not sufficient to defeat plaintiffs' right of recovery, I still think that the evidence discloses circumstances which would warrant any physician in declining to issue a certificate designating the cause of death and permitting burial without a *post mortem* examination.   It is true that the physician may have had a belief as to the cause of death, but the circumstances under which death occurred warranted him in hesitating to give the certificate required by the ordinance of the city of Denver in this case.   This being so and the proofs conclusively showing that the body was not mutilated and that the autopsy was performed in a decent and scientific manner, with due regard to the sex of the deceased and the feelings of all parties interested, I cannot conceive what damages could be proven to a jury.

The testimony discloses much that might be commented upon in support of my conclusion that the plaintiffs ought not to recover in this case and that the judgment of the court below must be affirmed, but respect for the dead and the living forbid it.   The judgment is affirmed.

*Affirmed.*